# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | BK No. 23-07031 |
| MUBARAK H. IBRAHIM, | Chapter 7 |
| Debtor. | Hon. Jacqueline Cox |
| GUS PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of Debtor Mubarak Ibrahim's Estate,<br><br>v.<br><br>12108 HOMER GLEN, LLC, PEOPLES PETROLEUM, INC., 12108 W. 159 HOMER GLEN LLC, OSAMA OMAR, AND SHADI HADDAD | Adversary Proc. No. _____<br><br>Hon. Jacqueline Cox |

## ADVERSARY COMPLAINT

Gus A. Paloian, in his capacity as the Chapter 7 trustee (the "**Trustee**") of the bankruptcy estate (the "**Estate**") of debtor Mubarak H. Ibrahim (the "**Debtor**"), alleges as follows for his complaint against 12108 Homer Glen, LLC ("**12108 Homer**"), Peoples Petroleum, Inc. ("**Peoples Petroleum**"), 12108 W 159 Homer Glen, LLC ("**W 159 Homer**"), Osama Omar, and Shadi Haddad. The claims in this Complaint all relate to the efforts by the Debtor to place the interest in the real property and gas station he held through his alter ego (and now dissolved) entity Petroleum Management Team, Inc. ("**Petroleum Management**") located at 12108 West 159th Street, Homer Glen, Illinois (the "**Homer Glen Property**") out of the reach of his creditors.

### I. Introduction

1. The Debtor owned many successful gas stations and related businesses, and at one time swore under oath that his businesses were worth a combined $26 million. By 2016, however,

{932233-3}     1

it was apparent to the Debtor that he faced significant liabilities in connection with a loan made by Theodore Spyropoulos ("**Spyropoulos**"). Spyropoulos had died in 2014, but his Trust (the "**Trust**") was pressing its claim. The Debtor realized he would owe the Trust millions of dollars. Therefore, the Debtor engaged in a series of transactions designed to fraudulently transfer businesses and real estate worth millions of dollars to related people and entities. Among these transactions were transfers of the real estate located at 12108 W. 159th St., Homer Glen, Illinois 60491 (the "**Real Estate**") and its related business to Defendants. In reality, however, these were sham transactions designed to hinder, delay, and defraud the Debtor's creditors, in particular the Trust. The Trustee brings this adversary proceeding against Defendants for their role in the fraudulent diversion of the Real Estate and business.

2. In 2017, the Trust sued the Debtor for breach of the promissory note in the Circuit Court of Cook County. On December 4, 2019, the Circuit Court of Cook County entered a judgment against the Debtor in the amount of $11,082,992.50 plus attorneys' fees in favor of the Spyropoulos Trust.

3. Even before the judgment was entered, the Debtor engaged in transactions with relatives, friends, and business associates designed to render himself judgment proof with the intent to defraud the Spyropoulos Trust and his other creditors. Some of those transactions involve the Debtors' intent to place his interests in the Homer Glen Property out of the reach of creditors.

**II.**     **Parties and Other Key Persons**

4. The Debtor is a resident of the Northern District of Illinois. He filed the chapter 7 case identified in the caption on May 28, 2023.

5. The Trustee is an attorney and a member of the Panel of chapter 7 trustees for the United States Bankruptcy Court for the Northern District of Illinois. He filed this case in his capacity as Trustee for the Estate.

6. Petroleum Management Team, Inc. was an Illinois corporation that was formed by the Debtor in 2006. The Debtor was identified as the registered agent for Petroleum Management from that time until its dissolution on July 14, 2023. Petroleum Management was an alter ego of the Debtor.

7. Defendant Peoples Petroleum, Inc. is an Illinois Corporation that was incorporated in December of 2019.  Its registered agent with the Illinois Secretary of State is Shadi Haddad, 12108 W. 159th St., Homer Glen, IL 60491.

8. Defendant 12108 Homer Glen LLC is an Illinois limited liability company identified in its filings with the Illinois secretary of state as having a principal address of 12108 W. 159th Street, Homer Glen, IL 60491. 12108 Homer's registered agent is Robert D. Loncar, 3501 E 106th St., Suite 206, Chicago, IL 60617.

9. Defendant 12108 W 159 Homer Glen LLC is an Illinois limited liability company identified in its filings with the Illinois secretary of state as having a principal address of 26 Mill Plan Rd., Danbury CT 60491.  W 159 Homer's registered agent is Registered Agents, Inc., 2501 Chatham Rd., Springfield, IL 62704.

10. Defendant Osama Omar is an individual who resides in Indiana. Defendant Peoples Petroleum's Annual Reports filed with the Illinois Secretary of State on October 26, 2021, December 1, 2022, and November 13, 2023 identified Mr. Omar as President, Secretary, and Director of Peoples Petroleum.  Defendant 12108 Homer's Articles of Organization filed with the Illinois Secretary of State on October 29, 2021 and its Annual Reports filed with the Illinois Secretary of State on November 10, 2022 and September 30, 2023 identify Mr. Omar as the sole manager or member having the authority of a manager for it. Mr. Omar is a longstanding business associate of

Document      Page 4 of 18

the Debtor. Mr. Omar sold his ownership of Peoples Petroleum on March 1, 2024 to Defendant Shadi Haddad.

11. Defendant Shadi Haddad is an individual who resides in the Northern District of Illinois. He purchased Peoples Petroleum from Mr. Omar in March 1, 2024 and is currently identified as the registered agent of Peoples Petroleum.

12. Mohammed Khan is an individual who resides in the Northern District of Illinois. Peoples Petroleum's Annual Report filed with the Illinois Secretary of State on November 23, 2020 identified Mr. Khan as its President and Secretary.

13. Iftekhar Syed is an individual who resides in the Northern District of Illinois. Peoples Petroleum's Annual Reports filed with the Illinois Secretary of State on November 23, 2020 and November 13, 2024 identified Iftekhar Syed as a director of Peoples Petroleum. Iftekhar Syed is a longstanding business associate of the Debtor and, at various points in time, has been an employee of entities owned by the Debtor. In an affidavit of Mr. Ibrahim dated October 28, 2024 filed in *Erika Spyropoulos et al. v. Mubarak Ibrahim*, Adversary Nos. 23-00393, he admitted that Iftekhar Syed had managed numerous gas stations on his behalf over the years.

14. Imtiaz Syed is an individual who, upon information and belief, resides in the Northern District of Illinois. Before March of 2024, Mr. Syed was the registered agent in the State of Illinois for Peoples Petroleum. Imtiaz Syed also is a long-time business associate of the Debtor.

15. Syed Kirmani is an individual who resides at 212 Hogs Back Road, Oxford, Connecticut 06478. Mr. Kirmani is the managing member of 12108 W 159 Homer Glen, LLC.

### III.   Jurisdiction and Venue

16. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is being heard by the Court pursuant to 28 U.S.C. § 157(a) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

17. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

18. If proceedings to avoid and recover fraudulent transfers are found to be core proceedings in which the Bankruptcy Court is unable to constitutionally enter final orders due to the holding in *Stern v Marshall*, 564 U.S. 462 (2011), this matter may be heard by the Bankruptcy Court under 28 U.S.C. § 157(c). *See Exec. Benefits Ins. Agency, Inc. v. Arkinson*, 573 U.S. 25 (2014).

19. The Trustee consents to the entry of a final order by this Court.

20. Pursuant to 28 U.S.C. §§ 1408 & 1409, this district is the proper venue for this adversary proceeding. The events from which this case arises occurred in the Northern District of Illinois.

## IV. Additional Facts Relevant to all Counts

### A. *Spyropoulos loaned the Debtor millions, which the Debtor failed to repay*

21. On January 15, 2010, Spyropoulos loaned $5,170,299 to the Debtor, evidenced by a demand note with 8% annual interest. The note required payment within 30 days of demand on pain of default. The note had a default rate of 10%.

22. In September 2014, Spyropoulos died and the note was transferred to the Trust.

23. The Trust demanded performance on the note, but the Debtor refused to pay.

24. On March 28, 2017, the Trust filed suit against the Debtor in the Circuit Court of Cook County, seeking to collect on the note.

### B. *The Debtor Created Petroleum Management and It is His Alter Ego*

25. In 2006, the Debtor formed Petroleum Management.

26. From its formation until its dissolution, the Debtor completely dominated Petroleum Management such that it was his alter ego. Numerous facts showed this domination:

{932233-3}                                5

  a. The Debtor was originally the 100% owner of Petroleum Management, completely controlled its affairs, and was always its President and Secretary.

  b. Only after he was sued by the Trust did the Debtor claim that Imtiaz Syed was a 30% owner of Petroleum Management.

  c. When a citation exam was taken of the Debtor on May 25, 2022 on behalf of the Trust in the state court litigation, the Debtor could not remember the details of how Imtiaz Syed acquired this ownership share, which suggests that this ownership was a sham concocted later.

  d. When subpoenaed by the Trustee in a Rule 2004 exam, Petroleum Management's purported 30% owner, Imtiaz Syed claimed he had no documents regarding Petroleum Management or the Homer Glen Property other than copies of tax returns.

  e. The Debtor is the only person who ever signed transaction documents on behalf of Petroleum Management. No documents show that Imtiaz Syed ever authorized any transactions on behalf of Petroleum Management.

  C. *Petroleum Management's Ownership of the Homer Glen Property*

27. On March 23, 2018, a Memorandum of Articles of Agreement for Deed was executed under which Homer Glen 159th LLC was to transfer its interest in the Homer Glen Property to Petroleum Management. The Debtor signed that agreement on behalf of Petroleum Management and identified himself as its President. The Memorandum was then recorded on April 4, 2018.

28. On August 31, 2018, Martinez, Shamat, & Associates provided an appraisal of the Homer Glen Property to Peoples Bank. This appraisal indicated that the "as is" value of the property as of August 9, 2018 was $830,000, but that when already in-process construction of the gas

station on the Homer Glen Property would be complete in October of 2018, the market value of the Homer Glen Property would be $2,200,000.00.

29.    On September 6, 2018, a special warranty deed was recorded with the Will County Recorder under which Homer Glen 159th LLC transferred the Homer Glen Property to the Debtor's alter ego, Petroleum Management.

30.    At the time it purchased the property, Petroleum Management was acting as the alter ego of the Debtor. It was completely controlled and dominated by the Debtor in deciding to make this purchase. By purchasing the Homer Glen Property through Petroleum Management rather than directly, the Debtor also made it more difficult for the Trust or other creditors of the Debtor to access the value of the Homer Glen Property to satisfy their claims against the Debtor.

31.    Also on September 6, 2018, the Debtor's alter ego, Petroleum Management, executed a construction mortgage with People's Bank SB in the amount of $1,000,000. The Debtor signed that agreement on behalf of Petroleum Management and identified himself as its Secretary.

32.    On January 31, 2019, Petroleum Management entered into a mortgage with Gas Depot Oil Company in the amount of $1,250,000. The Debtor signed that agreement on behalf of Petroleum Management and identified himself as its President.

    **D.**    ***The Trust obtains a multi-million dollar judgment against the Debtor.***

33.    On March 22, 2019, the Cook County Circuit Court denied the Debtor's motion for summary judgment, making it likely that the case would proceed to trial.

34.    On December 4, 2019, the Trust obtained a judgment against the Debtor in the amount $11,082,995.50.

    **E.**    ***Defendant Peoples Petroleum is established to operate the gas station located at the Homer Glen Property.***

35. Less than two weeks later, on December 17, 2019, Defendant Peoples Petroleum, filed Form BCA 2.10 with the Illinois Secretary of State which listed Imtiaz Syed as its registered agent. This is the same Imtiaz Syed, who the Debtor claimed to be a minority owner of the Debtor's alter ego, Petroleum Management.

36. In its November 23, 2020 annual report to the Illinois Secretary of State, Defendant Peoples Petroleum identified its registered agent as Imtiaz Syed and identified its only officers and directors as President and Secretary Mohammed Khan and Director Iftekhyar Syed.

37. On December 9, 2020, Defendant Peoples Petroleum d/b/a Homerglen Citgo filed an application for Business License with the village of Homer Glen to operate the gas station located at the Homer Glen Property, which listed a "Syed" as the primary contact and the Debtor as the second contact.

38. Upon information and belief, from in or about December 9, 2020, Defendant Peoples Petroleum has purported to operate the gas station located at the Homer Glen Property.

39. As of December 2020, it appears that the Debtor had a concealed interest in Defendant Peoples Petroleum.

40. As of December 2020, the Debtor, through different alter egos, owned and controlled the real property and business located at 11900 Marshfield Ave, Calumet Park, Illinois. While the Debtor supposedly had no interest in Defendant Peoples Petroleum, People's Petroleum's bank records indicate that it repeatedly sent and received money from Debtor's alter ego that owned the real property located at 11900 Marshfield. These transfers indicate that the Debtor had a concealed interest in Defendant Peoples Petroleum.

41. Similarly, the Debtor, through a different alter ego (Tinley Park Properties LLC), owned and controlled the Splish Splash Car Wash located at 7130 171st St., Tinley Park, Illinois.

{932233-3}    8

While the Debtor supposedly had no interest in Tinley Park Properties LLC or in Defendant Peoples Petroleum, its bank records indicate that it repeatedly sent money to Peoples Petroleum. These transfers also indicate that the Debtor had a concealed interest in Peoples Petroleum.

### F. *The Debtor's alter ego transfers the Homer Glen Property to Defendant 12108 Homer.*

42. On May 29, 2021, the Trust served the Debtor with a citation to discover assets in the state court litigation.

43. Without having retained any broker to market the Homer Glen Property, on October 29, 2021, the Debtor's alter ego, Petroleum Management, entered into an Agreement for Deed to transfer the Homer Glen Property to Defendant 12108 Homer for $1,220,000.00 with $270,000.00 supposedly being paid at the time of the signing of the agreement with the remainder to be paid in monthly installments of $6,679.79. The Debtor signed that agreement on behalf of Petroleum Management as its President. Osama Omar signed that agreement on behalf of Defendant 12108 Homer and identified himself as its Manager.

44. The purported sales price of $1,200,000 was significantly less than the market value of the Homer Glen Property. It was less than the amount of the mortgage loan made from Gas Depot Oil Company two years earlier. The purported sales price also was barely more than half of the appraised value of the Homer Glen Property as a completed gas station back in 2018.

45. Neither in the citation exams taken by the Trust nor in the Rule 2004 discovery taken by the Trustee in this bankruptcy did any subpoena respondent produce any documents evidencing that the alleged $270,000.00 up front payment was paid to Petroleum Management. In addition, the $270,000.00 amount was more than the entire gross revenue reported by Petroleum Management on either its 2021 or 2022 Form 1120 Corporate Tax Returns filed with the Internal Revenue Service, which suggest that the payment was never made.

46. Effectively simultaneously with making its agreement to purchase the Homer Glen Property, Defendant 12108 Homer Glen agreed to lease the Homer Glen Property to Defendant Peoples Petroleum, which meant it could continue operating the gas station. A "Syed" with no first or last name identified is indicated as being the responsible person for the business on an Application for Business License with the Village of Homer Glen by Defendant Peoples Petroleum dated November 22, 2021 to operate the Citgo at the Homer Glen Property. Iftekhar Syed subsequently signed contracts on behalf of Peoples Petroleum identifying himself as an officer of Peoples Petroleum and Imtiaz Syed was at this time the registered agent for Peoples Petroleum.

47. In or about November 2021, Gas Depot, Inc. assigned its rights under the mortgage it had on the Homer Glen Property to the Debtor's alter ego, Petroleum Management, for an alleged consideration of only $1.00.

48. On May 25, 2022, the Trust took a citation exam of the Debtor as part of its efforts to collect on the judgment. During that examination, the Debtor claimed he owned 70% of Petroleum Management.

49. On August 18, 2022, the Trust filed a motion for a turnover order concerning the Homer Glen Property in its pending lawsuit in Cook County Circuit Court.

50. On October 27, 2022, Newmark Valuation & Advisory, LLC provided an appraisal of the Homer Glen gas station to Centier Bank. The appraisal reported the market value of the property was $2,710,000 and that "the land contract purchase price of the real estate is below market and favorable to the buyer."

51. On January 23, 2023, a warranty deed was filed transferring the Homer Glen Property from the Debtor's alter ego, Petroleum Management, to Defendant 12108 Homer Glen. The

Debtor signed that deed on behalf of his alter ego, Petroleum Management, and identified himself as its President.

52. Petroleum Management left the closing with only $9,965.07. That same day, a mortgage was recorded for a loan of $854,000 from Centier Bank, LLC to 12108 Homer. That loan was guaranteed by both Osama Omar individually and Defendant Peoples Petroleum. The provision of the guaranty by Defendant Peoples Petroleum suggests there is some sort of common ownership link between it and Defendant 12108 Homer.

### G. *Defendant 12108 Homer subsequently transfers the Homer Glen Property to Defendant W 159 Homer.*

53. On March 1, 2024, a warranty deed was executed by Defendant 12108 Homer transferring the Homer Glen Property to Defendant W 159 Homer. That deed was signed by Osama Omar, who identified himself as manager of 12108 Homer.

54. On August 7, 2024, the warranty deed was recorded with the Will County Recorder. The PTAX-203 Illinois Real Estate Transfer Declaration filed with the Will County Recorder office on the same date asserted that the total consideration in the transaction was $1,500,000.00. Out of this transfer, the associated personal property was valued at $600,000.00 meaning only $900,000.00 was allocated to the Real Estate. The transfer declaration indicated it was prepared by Robert Loncar of Loncar Law. Mr. Loncar has previously represented the Debtor and many of his businesses.

55. The purported consideration of $1.5 million for the Homer Glen Property was barely more than half of the $2.7 million appraisal valuation by Newmark Valuation & Advisory in 2022. That appraisal had allocated $2,600,000 to the Real Estate, which was almost three times the amount allocated to the Real Estate only two years later in the Real Estate Transfer Declaration.

56. As alleged above, Defendant W 159 Homer is managed by Mr. Kirmani. The purchase of the Homer Glen Property was not the first time an entity supposedly controlled by Mr. Kirmani purchased a gas station formerly owned by the Debtor for significantly less than fair market value from the Debtor or parties that purportedly acquired the gas station from the Debtor. In 2021, 9856 South Cicero LLC, which claimed Mr. Kirmani was its sole member, purchased the gas station located at 9856 South Cicero Avenue, Oak Lawn, Illinois from the Debtor. This purchase was also for less than fair market value. Mr. Kirmani's involvement in multiple purchases of assets in this manner shows that he knowingly collaborated in efforts to put the Debtor's assets beyond the reach of creditors.

57. Effective as of its purchase of the Homer Glen Property, Defendant W 159 Homer leased the gas station to Defendant Peoples Petroleum, who had previously leased the property from Defendant 12108 Homer, and was involved in the Debtors' efforts to hide assets. In September 2024, W 159 Homer and Peoples Petroleum entered into a back-dated lease that was also effective as of March 1, 2024. Syed Kirmani signed that lease on behalf of W 159th Homer and asserted that he was its managing member.

### COUNT I
### Avoidance of Actual Fraudulent Transfers Pursuant to
### 11 U.S.C. § 548, 740 ILCS 160/5(a)(1), and 11 U.S.C. § 544(b), and 11 U.S.C. § 550
### (Against 12108 Homer)

58. The Trustee repeats and realleges the allegations in paragraphs 1 to 57 as if fully set forth herein.

59. In 2023, the Debtor, through his dominated and controlled alter ego entity Petroleum Management, transferred the Homer Glen Property to Defendant 12108 Homer with actual intent to hinder, delay or defraud the Debtor's creditors. This allegation is supported by the facts that:

    a. The transfer was conducted in a way which allowed Peoples Petroleum, which Mr. Ibrahim has or had an undisclosed relationship with, to continue operating the property (740 ILCS 160/5(b)(2));

    b. The full terms of the sale were concealed to make it look like more was being paid for the Homer Glen Property (740 ILCS 160/5(b)(3));

    c. Before the transfer of the Homer Glen Property, the Trust had obtained a judgment against the Debtor (740 ILCS 160/5(b)(4));

    d. The transfer allowed the Debtor and his alter ego Petroleum Management to put assets beyond the reach of creditors (740 ILCS 160/5(b)(7));

    e. The value received by the Debtor and his alter ego Petroleum Management were not reasonably equivalent to the assets being transferred (740 ILCS 160/5(b)(8));

    f. The Debtor was insolvent at the time of the transfer (740 ILCS 160/5(b)(9)); and

    g. The transfer was made shortly after the Trust received a judgment against the Debtor (740 ILCS 160/5(b)(10)).

60. Therefore, the transfer of the Homer Glen Property to Defendant 12108 Homer was an avoidable transfer within the meaning of 740 ILCS 160/5(a)(l), is subject to avoidance by the Trustee under 11 U.S.C. § 544, and the Trustee may recover, for the benefit of the Estate, the amount of the transfers if they are avoided under 740 ILCS § 160/5 and 11 U.S.C. § 544 and the Trustee is entitled to the value of the Homer Glen Property under 11 U.S.C. § 550.

61. The facts alleged in paragraph 59 above also show that the transfer of the Homer Glen Property to Defendant 12108 Homer was made "with actual intent to hinder, delay, or defraud" the Trust within the meaning of 11 U.S.C. 548(a)(1)(A), is subject to availability by the

{932233-3}  13

Trust, is subject to avoidance by the Trustee under 11 U.S.C. § 548, and the Trustee is entitled to the value of the Homer Glen Property under 11 U.S.C. § 550.

WHEREFORE, the Trustee requests that the Court avoid the transfer to 12108 Homer Glen and enter judgment in his favor for the value of the transfer of the Homer Glen Property against 12108 Homer Glen, plus interest and other amounts allowable.

## COUNT II
### Avoidance of Constructive Fraudulent Transfer Pursuant to
### 740 ILCS § 160/6 and 11 U.S.C. § 544 and 11 U.S. § 550
### (Against 12108 Homer Glen)

62. The Trustee repeats and realleges the allegations in paragraphs 1 to 61 as if fully set forth herein.

63. The Debtor's transfer, through his dominated and controlled alter ego entity Petroleum Management, of the Homer Glen Property to Defendant 12108 Homer also was a constructive fraudulent transfer.

64. The purchase price paid by 12108 Homer Glen to the Debtor's alter ego Petroleum Management was not reasonably equivalent value for the Homer Glen Property. The lack of reasonably equivalent value is shown by, among other things, the purchase price for the Homer Glen Property being less than the amount of recently incurred mortgage indebtedness, being only slightly above half of the appraised value from 2018, and being for less than 50% of the appraised value on the appraisal the bank providing financing to the purchaser received.

65. The Debtor was insolvent at that time of the transfer of the Homer Glen Property by his alter ego Petroleum Management or became insolvent because of the transfer.

WHEREFORE, the Trustee requests that the Court avoid any transfer to 12108 Homer Glen and enter judgment in his favor for the value of the transfer against 12108 Homer Glen, plus interest and other amounts allowable.

## COUNT III
### Recovery Against Subsequent Transferee of Avoidable Transfer
### Pursuant to 11 U.S.C. § 550
### (Against W 159 Homer)

66. The Trustee repeats and realleges the allegations in paragraphs 1 to 65 as if fully set forth herein.

67. The Debtor's transfer (through his alter ego) of the Homer Glen Property to 12108 Homer Glen is avoidable under Count I or Count II of the Complaint.

68. Defendant W 159 Homer is a mediate transferee of the Homer Glen Property.

69. In acquiring the Homer Glen Property for substantially less than market value and with the knowledge that it was part of a broader effort to put assets beyond the reach of the Debtor's creditors, W 159 Homer did not acquire the Homer Glen Property in good faith and is a party from which that transfer, or its value, can be recovered under 11 U.S.C. § 550.

WHEREFORE, the Trustee requests that the Court find that it can recover the value of the Homer Glen Property from W 159 Homer and enter judgment in his favor for the value of the transfer against W 159 Homer, plus interest and other amounts allowable.

## COUNT IV
### Declaratory Judgment
### (Against 12108 Homer Glen)

70. The Trustee repeats and realleges the allegations in paragraphs 1 to 69 as if fully set forth herein.12108 Homer Glen is a straw man possessing mere naked title to the Homer Glen Property while Debtor continues to exercise control of the real property.

71. Under Illinois law, when a title holder holds title to property for the benefit of someone else, the title holder holds such property in a resulting trust.

72. Defendant 12108 Homer Glen holds the Homer Glen Property for the Debtor's benefit.

73. The purchase price for the Homer Glen Property was set so as to make insignificant the purchase price paid to 12108 Homer Glen for the Homer Glen Property.

74. The transfer of the Homer Glen Property, was made in anticipation of the Debtor being subject to collection activity by the Trust.

75. The Debtor and his agents continued to exercise dominion and control over the Homer Glen Property after the sale.

WHEREFORE, the Trustee requests that the Court enter judgment finding that 12108 Homer Glen held the Homer Glen Property in trust for the Debtor, and in his favor against 12108 Homer Glen in an amount to be proven at trial for the value of the Homer Glen Property and any profits or gains 12108 Homer Glen earned from the Homer Glen Property, plus interest and other amounts allowable.

**COUNT V**
**Turnover of Assets Pursuant to 11 U.S.C. § 542**
**(Against Peoples Petroleum, Mr. Omar, and Mr. Haddad)**

76. The Trustee repeats and realleges the allegations in paragraphs 1 to 75 as if fully set forth herein.

77. Peoples Petroleum, in whole or in part, is an alter ego or nominee of the Debtor. Peoples Petroleum has been operated for the benefit of the Debtor.

78. Peoples Petroleum has not turned over to the Trustee the personal property it has been operating for the benefit of the Debtor or the profits it has earned from this property.

79. Mr. Omar, through his former ownership of Peoples Petroleum, earned monies from the personal property related to the Homer Glen Property it has been operating for the benefit of the Debtor. Mr. Omar has not turned over these earnings to the Trustee.

80. Upon information and belief, Mr. Haddad, through his current ownership of Peoples Petroleum, earned money from the personal property it has been operating related to the Homer Glen Property for the benefit of the Debtor. Mr. Haddad has not turned over these earnings to the Debtor.

81. Upon information and belief, Mr. Haddad's interest in Peoples Petroleum is being held for the benefit of the Debtor such that Mr. Haddad is the Debtor's nominee.

WHEREFORE, the Trustee requests that the Court enter judgment in his favor against Peoples Petroleum, Mr. Omar, and Mr. Haddad in an amount to be proven at trial for the value of the personal property of the Debtor that Peoples Petroleum has been holding plus any profits or gains earned from that personal property by Peoples Petroleum, Mr. Omar, and Mr. Haddad, plus interest and other amounts allowable, and order Mr. Haddad to turnover his interest in Peoples Petroleum to the Estate.

Dated: May 23, 2025

GUS A. PALOIAN, not individually or personally, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate

By: *Jonathan M. Cyrluk*
    Jonathan M. Cyrluk

Jonathan M. Cyrluk
Steven C. Moeller
CARPENTER LIPPS LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
312-777-4300 (tel)
312-777-4839 (fax)
cyrluk@carpenterlipps.com
moeller@carpenterlipps.com

David A. Beck*
CARPENTER LIPPS LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
614-365-4100 (tel)

{932233-3}                    17

614-365-9145 (fax)
beck@carpenterlipps.com

*Special counsel to Chapter 7 Trustee Gus A. Paloian*

*\*Admitted Pro hac vice*